IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL D. SMITH and | § | |
| MARGUERITE SMITH, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:14-cv-2402-M-BN |
| | § | |
| JPMORGAN CHASE BANK, | § | |
| NATIONAL ASSOCIATION | § | |
| and MATTHEW TRAN, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States Magistrate Judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference. Plaintiffs Michael D. Smith and Marguerite Smith have filed a motion to remand [Dkt. No. 10] and Defendants JPMorgan Chase Bank, National Association ("JPMC") and Dienbao Tran have filed Rule 12(b)(6) motions to dismiss [Dkt. Nos. 6 & 7].

The undersigned issues the following findings of fact, conclusions of law, and recommendation that Tran is an improperly joined defendant and should be dismissed, Plaintiffs' motion to remand should be denied, Tran's motion to dismiss should be denied as moot, and JPMC's motion to dismiss should be granted in part and denied in part.

## Background

Plaintiffs obtained a residential home mortgage loan in 2003 and a home equity loan two years later. Both loans were subsequently purchased by Defendant JPMC.

On January 28, 2013, Plaintiffs made their monthly mortgage payment in the amount of $4,3000. In early February 2013, Defendant Tran solicited Plaintiffs about refinancing the mortgage loan and home equity loan by combining them into one loan with a lower interest rate. Plaintiffs were conditionally approved for refinancing and signed a lock-in agreement to lock in the lower interest rate.

JPMC then declared Plaintiffs' mortgage loan to be in default. Tran determined that the alleged default was caused by a $10,000 coding error, in which JPMC coded the January 28, 2013 payment as $14,300 instead of $4,300. Tran informed Plaintiffs that they were current in the loan payments and did not need to make the next monthly payment. The coding error and failure to make one monthly payment triggered demands by JPMC for amounts that Plaintiffs claim were not due, collection efforts, threats of loan acceleration and foreclosure, and refusal to refinance.

Plaintiffs filed their Original Petition in County Court at Law No. 1 of Dallas County, Texas. *See* Dkt. No. 1-1 at 4, 5-23. Defendant JPMC timely filed a Notice of Removal. *See* Dkt. No. 1. JPMC's Notice of Removal was based on diversity of citizenship, with JPMC arguing that Defendant Tran, a Texas resident, was improperly joined as a party because Plaintiffs cannot establish a cause of action against Tran in state court. JPMC also asserts that Tran's consent to removal is not required because he was improperly joined.

Each Defendant filed a motion to dismiss for failure to state a claim. *See* Dkt. Nos. 6 & 7. Plaintiffs filed a combined response to both motions, *see* Dkt. No. 15, and Defendants filed a reply, *see* Dkt. No. 16.

Plaintiffs also filed a Motion to Remand. *See* Dkt. No. 10. Defendants filed a response, *see* Dkt. No. 17, and Plaintiffs did not file a reply.

## Motion to Remand

<u>Legal Standards</u>

Before proceeding to the arguments raised by Defendants' motions to dismiss, the Court must determine whether Tran should be disregarded as an improperly joined defendant for purposes of diversity jurisdiction. A defendant alleging improper joinder has the heavy burden of "demonstrating either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)); *see also Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc) (describing the "heavy burden" on the party asserting improper joinder and noting that, "until the removing party does so, the court does not have the authority to do more" and "lacks the jurisdiction to dismiss the case on its merits"). Under the second prong, the standard is whether the defendant has demonstrated that there is no reasonable basis to predict that the plaintiff might be able to recover against the in-state defendant. *See Smallwood*, 385 F.3d at 573. Ordinarily, the court must conduct a Rule 12(b)(6)-type analysis, examining the allegations in the complaint to determine

whether the plaintiff has stated a claim against the non-diverse defendants. *See Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006). If, however, the complaint has "omitted discrete facts, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* But the United States Court of Appeals for the Fifth Circuit has "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74.

Because there is no dispute or allegation of actual fraud concerning the fact that both Plaintiffs and Tran are Texas residents, the sole concern in the instant case is whether, as a matter of law, Plaintiffs have alleged a valid state-law cause of action against Tran. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). Therefore, this Court must determine whether JPMC has demonstrated that there is no reasonable basis to predict that Plaintiffs might be able to recover against Tran. *See Smallwood*, 385 F.3d at 573. In making this determination, the undersigned will "'evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff'" and "'then examine relevant state law and resolve all uncertainties in favor of the nonremoving party.'" *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 260 n.8, 264 (5th Cir. 1995) (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205-06 (5th Cir. 1983)).

*Applicability of the Federal or Texas Pleading Standard*

As a threshold issue in this case, this Court must decide if it should look to the

federal or state pleading standard to determine whether a plaintiff can state a claim

for relief against an in-state defendant. The Fifth Circuit has not addressed this issue

in a published opinion, and the decisions of judges in this district are divided on the

issue. Some judges in this district have applied the federal pleading standard in their

analysis but have done so without discussing or referencing the difference between

Texas and federal pleading requirements. *See Helm v. Moog Inc.*, No. 4:11-cv-109-Y,

2011 WL 3176439, at *2 (N.D. Tex. July 27, 2011); *Mugweni v. Wachovia Corp.*, No.

3:08-cv-1889-G-BF, 2011 WL 2441255, at *2 (N.D. Tex. Apr. 19, 2011), *rec. adopted*,

2011 WL 2441838 (N.D. Tex. June 17, 2011); *Marten v. Winover*, No. 3:11-cv-1164-K,

2011 WL 4485966, at *2 (N.D. Tex. Sept. 27, 2011). On the other hand, the Fifth

Circuit, in an unpublished decision, along with some decisions by judges in this

district, have applied the Texas "fair notice" pleading standard in the improper joinder

analysis. *See De La Hoya v. Coldwell Banker Mex., Inc.*, 125 F. App'x 533, 537-38 (5th

Cir. 2005); *Durable Specialities, Inc. v. Liberty Ins. Corp.*, No. 3:11-cv-739-L, 2011 WL

6937377, at *5 (N.D. Tex. Dec. 30, 2011) (finding the Fifth Circuit's application of the

state pleading standard in *De La Hoya* to be logical and therefore applying Texas's "fair

notice" standard); *Smith v. Shred-It USA*, No. 3:10-cv-831-O-BK, 2010 3733902, at *2-

*3 (N.D. Tex. Sept. 23, 2010) (distinguishing cases that applied the federal pleading

standard in the improper joinder analysis and noting the focus is on the plaintiff's

possibility of success in state court); *Shioleno Indus., Inc. v. Liberty Mut. Fire Ins. Co.*,

No. 3:11-cv-971-O-BK, 2012 WL 176572, at *3-*4 (N.D. Tex. Jan. 6, 2012) (applying the

state pleading standard in the improper joinder analysis but first noting the

disagreement among judges in this District as to whether federal or state pleading standards apply); *Yaldell v. Geovera Specialty Ins. Co.*, No. 3:12-cv-1908-M, 2012 WL 5451822, at *2-*3 (N.D. Tex. Nov. 8, 2012) (noting the disagreement in this district as to whether federal or state pleading standards apply before finding the Fifth Circuit's decision in *De La Hoya* to be "entirely logical" and applying Texas's "fair notice" standard).

The undersigned is persuaded by the reasoning in the cases applying the "fair notice" standard. "When a party files suit in a Texas [state] court, such party expects to be governed by the rules of the game that apply to the civil pleading requirements of that state court system." *Durable Specialties*, 2011 WL 6937377 at *5. The undersigned agrees that "[f]undamental fairness compels that the standard applicable at the time the initial lawsuit was filed in state court should govern." *Id.*; *see also Yaldell*, 2012 WL 5451822 at *3.

Accordingly, the undersigned concludes that the Texas "fair notice" pleading standard should be applied in determining whether an in-state defendant has been improperly joined.

*Texas "Fair Notice" Pleading Standard*

Under the Texas Rules of Civil Procedure, a pleading may contain legal conclusions as long as fair notice to the opponent is given by the allegations as a whole. *See* TEX. R. CIV. P. 45(b). The state court liberally construes a plaintiff's petition in the plaintiff's favor. *See Starcrest Trust v. Berry*, 926 S.W.2d 343, 349 (Tex. App. – Austin 1996, no writ). The court will also look at the plaintiff's intent and uphold a petition,

even when the plaintiff has not specifically alleged some element of a cause of action, by supplying every fact that can reasonably be inferred from what the plaintiff specifically did state. *See Torch Operating Co. v. Bartell*, 865 S.W.2d 552, 554 (Tex. App. – Corpus Christi 1993, writ denied). The goal is only to ensure that the opposing party gets sufficient information to supply fair and adequate notice of the facts on which the plaintiff bases the claim. *See Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982).

Analysis

Whether the Court should remand this case turns on the sufficiency of the allegations set forth in Plaintiffs' Original Petition ("Petition"). Therefore, the undersigned begins the analysis with a review of the relevant allegations set forth by Plaintiffs against Tran.

Plaintiffs allege that Tran, "a mortgage broker with CHASE bank," solicited them via the internet about refinancing their mortgage and home equity loans. Tran offered them a unique mortgage that would combine their existing home mortgage and home equity loan into a single loan from JPMC at a substantial savings to Plaintiffs. Plaintiffs paid JPMC $500.00 to lock in the interest rate on the refinanced loan, and Tran informed Plaintiffs that all necessary documents for the refinance were in his possession and that the only remaining step was for him to schedule the closing. Some time before the closing was scheduled, and before the expiration of the lock-in date, JPMC wrongfully misrepresented that Plaintiffs' mortgage was in default. Plaintiffs contacted Tran for guidance, and Tran, after investigation, advised Plaintiffs that

JPMC had committed a coding error and wrongfully demanded $14,300.00 from Plaintiffs' bank account, which was $10,000.00 more than Plaintiffs' $4,300.00 February 2013 mortgage payment check. Despite Tran's knowledge that Plaintiffs were not in default on the mortgage and that the alleged default was due to JPMC's error, Tran refused to arrange the closing on Plaintiffs' refinanced loan within the lock-in period. Tran informed Plaintiffs that the JPMC error would not affect their credit report, but JPMC reported Plaintiffs' mortgage as being in default. Tran also informed Plaintiffs that their mortgage was paid through May 2013, despite JPMC's claim that it was in default, and advised Plaintiffs that their next payment was due on June 1, 2013. Plaintiffs relied on Tran's representation and did not make a payment for May, which caused the note to have an unpaid amount. *See* Dkt. No. 1-1 at 8-10.

Plaintiffs sued Tran for negligently supplying information for the guidance of others under Restatement (Second) of Torts § 552, negligence, negligent misrepresentation, and improper interference with contract. *See id.* at 17-20.

Tran states that he was incorrectly sued as "Matthew Tran." *See* Dkt. No. 17 at 1. According to documents in the record, Tran used the names Matthew or Matt when corresponding with Plaintiffs, and the only times the name Dienbao appears is on the Lock-In Agreement and the Mortgage Conditional Approval. *See* Dkt. Nos. 10-1 at 34-35, 42, 43, 47.

JPMC asserts that Tran was improperly joined because all of Plaintiffs' claims against Tran fail as a matter of law. *See* Dkt. No. 17.

*Individual Liability*

JPMC contends that Plaintiffs have no claim against a lender's employee individually absent an allegation that the acts were made outside the scope of his employment. *See RSR Props., Inc.*, 706 F. Supp. 524, 533 (W.D. Tex. 1989). In their motion to remand, Plaintiffs argue that there are no allegations that Tran was an employee of JPMC. *See* Dkt. No. 17 at 3. But, in their Petition, Plaintiffs allege Tran was a mortgage broker with Chase bank. *See* Dkt. No. 1-1 at 8, 19. And Plaintiffs' response to the motion to remand includes correspondence from Tran showing both jpmchase and chase email accounts and a Chase office address, Tran's Chase business card, and the Lock-In Agreement with a signature line for Tran as the JPMorgan Chase Bank, N.A. representative. *See* Dkt. No. 10-1 at 34-35, 39-42. Because there are no allegations that Tran was acting outside the scope of his authority as an agent of JPMC, he cannot be sued individually. *See RSR Props., Inc.*, 706 F. Supp. at 533.

*Negligence, Negligent Misrepresentation, and Negligently Supplying Information*

Plaintiffs' three negligence-based claims are based on allegations that Tran misrepresented that Plaintiffs did not need to make the May 2013 payment after JPMC's $10,000.00 coding error, and their reliance on Tran's misrepresentation resulted in JPMC's refusal to go through with refinancing. Plaintiffs further allege that Tran had a duty as a mortgage banker to "work on a fair deal" and that he failed to exercise reasonable care or competence in advising Plaintiffs to forgo the May 2013 payment. *See* Dkt. No. 1-1 at 17-19.

The elements of a negligence claim are: (1) a legal duty owed by one person to

another; (2) breach of that duty by Tran; and (3) damages proximately caused by the breach. *See Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008); *Nabors Drilling, USA, Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). Under Texas law, there is no special relationship between a mortgagor and mortgagee that would give rise to a stand-alone duty of good faith and fair dealing. *See Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326, 329 (5th Cir. 2013); *Levels v. Merlino*, 969 F. Supp. 2d 704, 717-18 (N.D. Tex. 2013).

The elements of the claims for negligently supplying information for the guidance of others under Restatement (Second) of Torts § 552 and negligent misrepresentation are the same: Plaintiff must prove (1) a representation made by Tran in the course of his business, or in a transaction in which he had a pecuniary interest; (2) that Tran supplied "false information" for the guidance of others in their business; (3) that Tran did not exercise reasonable care or competence in obtaining or communicating the information; and (4) that Plaintiffs suffered pecuniary loss by justifiably relying on the representation. *See Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (Restatement (Second) of Torts § 552); *Johnson v. Wells Fargo Bank, N.A.*, 999 F. Supp. 2d 919, 929 (N.D. Tex. 2014) (negligent misrepresentation).

Defendants assert that Plaintiffs fail to plead facts to support three of these elements. First, Defendants argue that Tran's representations about whether Plaintiffs' May 2013 payment had been posted were true at the time they were made. *See Evans v. United Air Lines, Inc.*, No. 94-20837, 1995 WL 450203, at *2 (5th Cir. July

5, 1995) ("To prevail on a claim of negligent misrepresentation, a plaintiff must show misrepresentation of an existing fact."). Defendants point to a copy of Tran's April 26, 2013 email to Plaintiffs and a mortgage loan statement dated April 29, 2013 showing payment due on June 1, 2013. *See* Dkt. No. 10-1 at 47-48. But, for purposes of the motion to remand, and construing the Petition in the light most favorable to Plaintiffs, those documents do not demonstrate as a matter of law that Tran's statements were either true or false.

Second, Defendants argue that Plaintiffs' reliance on Tran's statements that they did not need to make the May 2013 payment were not justified because Plaintiffs knew their account was not current. To establish justifiable reliance, "there must be a reasonable relation between the contents of the defendant's misrepresentation and the action plaintiff took in reliance. The justifiableness of the reliance is judged in light of the plaintiff's intelligence and experience." *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 358 (5th Cir. 1996) (citations omitted). For purposes of the motion to remand, and construing the Petition in the light most favorable to Plaintiffs, even though Plaintiffs knew they had not made their regular monthly payment, they also knew that JPMC made a posting error and took $10,000.00 more than Plaintiffs owed. Under those circumstances, Plaintiffs would have been justified in relying on Tran's statement that they did not need to make a payment for the month of May 2013.

Third, Defendants argue that Plaintiffs fail to identify any damages that resulted from Tran's alleged misstatement. Plaintiffs allege that, as a result of their reliance on Tran's advice that they need not make the May 2013 repayment, their loan

was considered in default and that they were denied a mortgage refinance, which caused them to pay a higher interest rate under the original loan. But damages for negligent misrepresentation are limited to pecuniary loss and do not include benefit-of-the-bargain damages. *See Sloane*, 825 S.W.2d at 442 (quoting Restatement (Second) of Torts § 552B)).

Defendants also assert that Plaintiffs' negligence-based claims are barred by the statute of frauds. The statute of frauds requires that certain contracts be in writing in order to be enforceable. Under Texas law, a "'loan agreement in which the amount involved in the loan agreement exceeds $50,000.00 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.'" *Gordon v. JPMorgan Chase Bank, N.A.*, 505 F. App'x 361, 362 (5th Cir. 2013) (quoting TEX. BUS. COM. CODE § 26.02(b)). Plaintiffs do not allege that there was a signed written agreement excusing their May 2013 payment, and any oral modification of the mortgage loan agreement as a result of Tran's instruction to skip the May 2013 payment is unenforceable as a matter of law. *See id.*

Defendants also asserts that Plaintiffs' negligence-based claims are barred by the economic loss rule. *See Johnson v. Wells Fargo Bank, N.A.,* 999 F. Supp. 2d 919, 930-31 (N.D. Tex. 2014). Under Texas law, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). Thus, tort damages are generally not recoverable if the defendant's conduct "would give rise to liability only because it breaches the parties' agreement."

*Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). Tort damages are recoverable, however, if the defendant's conduct "would give rise to liability independent of the fact that a contract exists between the parties." *Id.* In *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986), a negligent supervision case, the Texas Supreme Court explained: "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Id.* at 618; *see also DeLanney*, 809 S.W.2d at 494 ("When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.").

"In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C. Penney Co.*, No. 3:05-cv-2499-L, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45-47 (Tex. 1998)); *DeLanney*, 809 S.W.2d at 494-95.

The undersigned concludes that Plaintiffs' claims for negligently supplying information and negligent misrepresentation claims, based on Tran's representations that they did not need to make the May 2013 payment, are barred by the economic loss doctrine. Plaintiff does not allege any facts to support the existence of a special relationship with Defendants. Moreover, even assuming the truth of Plaintiffs' allegations, their claims fail because they have failed to allege an injury independent

from the default of their mortgage loan agreement with JPMC or the revocation of the alleged refinance contract. *See Scott v. Wells Fargo Bank, NA*, No. 4:11-cv-600, 2013 WL 5450600, at *9 (E.D. Tex. Sept. 30, 2013) (dismissing negligent misrepresentation claim under economic loss doctrine); *accord Hutchison v. Bank of Am., N.A.*, No. H–12–3422, 2013 WL 5657822, at *7 (S.D. Tex. Oct.16, 2013), *aff'd*, 575 F. App'x 443, 444 (5th Cir. 2014) ("we agree totally with the reasoning and results set forth by the district court in its Memorandum Opinion & Order").

For all of these reasons, there is no reasonable basis to predict that Plaintiffs might be able to prevail on their claims against Tran for negligence, negligent misrepresentation, or negligently supplying information for the guidance of others under Restatement (Second) of Torts § 552.

*Interference with Contract*

Finally, Plaintiffs allege Tran improperly interfered with the refinancing contract. "'To recover for tortious interference with contract, a plaintiff must prove: (1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act caused damage; and (4) that actual damage or loss occurred.'" *Amigo Broadcasting, LP v. Spanish Broadcasting Sys., Inc.*, 521 F.3d 472, 489 (5th Cir. 2008) (quoting *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).

Plaintiffs allege that Tran was a mortgage banker who interfered with the existing lock-in agreement between his employer – JPMC – and Plaintiffs. *See* Dkt. No. 1-1 at 19-20. When an employee is accused of interfering with his employer's contract,

Plaintiffs must prove that the employee acted solely in his own interests and that he acted willfully and intentionally to serve the employee's personal interests at the employer's expense. *See Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456-57 (Tex. 1998)*; Holloway v. Skinner*, 898 S.W.2d 793, 798 (Tex. 1995). To determine whether an employee acted against his employer's interests, the Court considers whether the employer complained about the employee's actions. "[I]f a corporation does not complain about its agent's actions, then the agent cannot be held to have acted contrary to the corporation's interests." *Powell Indus., Inc.*, 985 S.W.2d at 457.

Plaintiffs have not alleged facts to show that Tran personally benefitted from Plaintiffs' failure to close on the refinance loan, that Tran acted to serve his own personal interests at JPMC's expense, or that JPMC complained about Tran's conduct. *See* Dkt. No. 1-1. Therefore, there is no reasonable basis to predict that Plaintiffs might be able to prevail on their claim against Tran for interfering with the lock-in agreement.

### *Estoppel and Waiver*

Plaintiffs also raise estoppel and waiver. *See* Dkt. No. 1-1 at 20. These are affirmative defenses, not causes of action. *See Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988) ("Waiver and estoppel are defensive in nature and operate to prevent the loss of existing rights. They do not operate to create liability where it does not otherwise exist."). Plaintiffs allege Defendants are estopped from and have waived any rights to assert claims based on untimely payments and any associated fees, penalties, additional interest, late charges or fines under the mortgage

contract and are estopped from and waived the right to present Plaintiffs as past due. *See* Dkt. No. 1-1 at 20. Estoppel and waiver are defenses to claims that Tran has not pleaded, and, according to the Petition, Tran told Plaintiffs they were not past due. Furthermore, Plaintiffs sued Tran individually and do not allege that he personally could recover amounts owed under Note and Deed of Trust in his individually capacity. There is no reasonable basis to predict that Plaintiffs might be able to prevail on estoppel or waiver against Tran in state court.

<u>Conclusion</u>

The undersigned recognizes that Defendants have a heavy burden to prove that there is no reasonable basis to predict that Plaintiffs might be able to recover against Tran. But the undersigned concludes that Defendants have met this burden.

Because Tran was not a proper party in the state court, his consent was not required for removal. *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *see also Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007). Further, because Tran was improperly joined, he should be dismissed, and the Court should deny as moot Defendant Tran's Motion to Dismiss [Dkt. No. 7]. And, because, with Tran's dismissal, complete diversity of citizenship exists, the Court should deny Plaintiffs' Opposed Motion to Remand [Dkt. No. 10]. *See Moreno Energy, Inc. v. Marathon Oil Co.*, No. H-11-4518, 2012 WL 3205618, at *8 (S.D. Tex. Aug. 3, 2012) (where non-diverse party found to be improperly joined, defendant is dismissed, and any motion made by it is moot); *Adams v. Chase Bank*, No. 3:11-cv-3085-M, 2012 WL 2122175, at *3 (N.D. Tex. May 11, 2012), *rec. adopted*, 2012 WL 2130907 (N.D. Tex. June 12, 2012) (same).

**Motion to Dismiss**

Plaintiffs sued JPMC for breach of contract, unlawful debt collection, including claims for violations of the Texas Debt Collection Practices Act and Texas Deceptive Trade Practices Act, conversion, and negligence. *See* Dkt. No. 1-1. JPMC asserts that Plaintiffs failed to state any claims for which relief may be granted and seek dismissal of those claims under Rule 12(b)(6). *See* Dkt. No. 6.

<u>Legal Standards</u>

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Fed. R. Civ. P. 8(a)(2), a complaint need not contain detailed

factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

Plaintiffs assert that the Court should look to Texas state pleading requirements in assessing JPMC's motion to dismiss. But, "[w]hile this case originated in state court and was later removed to federal court by [JPMC], [Plaintiffs'] pleadings must nevertheless conform to federal pleading requirements." *Genella v. Renaissance Media*, 115 F. App'x 650, 652-53 (5th Cir. 2004) (internal quotation marks omitted).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *See Katrina*, 495 F.3d at 205. Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the

contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

Analysis

*Breach of Contract*

Plaintiffs assert two breach of contract claims against JPMC: one for breach of the original mortgage loan and one for breach of the lock-in agreement. The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

The parties agree that the original mortgage loan was a valid contract. Plaintiffs allege that the contract provided for monthly payments of $4,211.65 for a 30-year term at a 5.750% interest rate and that they made payments of $4,300.00 per month for all

monthly payments due except for the one payment that Tran advised them not to make, which they allege was excused. They also allege that JPMC posted one of those $4,300.00 payments as $14,300.00 and failed to correct its error or account for the additional $10,000.00. JPMC's $10,000.00 posting error allegedly led to other problems, including the excused payment, misrepresentations that Plaintiffs were in default, and threats of foreclosure or acceleration of the mortgage loan. Plaintiffs allege that JPMC breached the contract by failing to properly service Plaintiffs' payments; failing to provide a proper accounting of its servicing of Plaintiffs' loan; wrongfully and illegally taking possession of $10,000.00 and not accounting for that money; misrepresenting that Plaintiffs were in default, the property was subject to foreclosure, and the loan was subject to acceleration; and failing to properly service the loan according to the terms of the mortgage loan.

The undersigned concludes that Plaintiffs stated, at least for purposes of a Rule 12(b)(6) analysis, a plausible claim for breach of the original mortgage loan contract. Although JPMC argues that Plaintiffs admit they did not make a payment for May 2013, alleging that Tran told them they were not required to do so, Plaintiffs allege that the $10,000.00 overpayment excused this payment and led to JPMC's allegedly breaching by erroneously representing that Plaintiffs were in default. The disputes on which JPMC seeks judgment on this claim are factual issues not properly resolved on a Rule 12(b)(6) motion.

Plaintiffs also allege that JPMC offered to refinance Plaintiffs' mortgage loan and home equity loan by combining the two loans into a single loan at a lower interest

rate. Plaintiffs allege that JPMC and Plaintiffs entered into a Conditional Approval for Refinance and that Plaintiffs signed a Lock-In Agreement. Plaintiffs allege that they paid JPMC $500.00 to lock in the interest rate on the refinanced loan at 3.75% interest until May 17, 2013 and completed all conditions precedent to obtain refinancing before the expiration of the lock-in agreement but that, instead of scheduling a closing on the refinance agreement, JPMC breached the lock-in agreement by wrongfully declaring Plaintiffs' mortgage to be in default as a result of the posting error. Plaintiffs allege that they suffered damages because they lost the opportunity to refinance their mortgage and home equity loan at the locked-in lower interest rate and they otherwise were unable to obtain refinancing because JPMC declared their mortgage to be in default, which was reflected on their credit report.

JPMC argues that Plaintiffs have failed to state a claim for breach of the lock-in agreement because there are no allegations that JPMC gave its final approval for refinancing or executed a written agreement modifying the existing loan. Copies of the Mortgage Conditional Approval and Lock-In Agreement are attached to the Motion to Remand, *see* Dkt. No. 10-1 at 39-46, but not the Petition. Generally, in considering a motion to dismiss under Rule 12(b)(6), the Court is limited to the contents of the pleadings and documents attached to the pleadings. *See Katrina*, 495 F.3d at 205. The Fifth Circuit has recognized a limited exception to this rule to allow the Court to consider documents attached to a motion to dismiss if they are referred to in the plaintiffs complaint and are central to their claim. *See Collins*, 224 F.3d at 498. The Mortgage Conditional Approval and Lock-In Agreement do not fall within the exception

and cannot be considered to determine whether Plaintiffs stated a claim for breach of the lock-in agreement.

In their Petition, Plaintiffs fail to allege facts to show that the lock-in agreement was a valid contract. They allege only that they signed the agreement but do not allege facts demonstrating mutual assent. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). Plaintiffs failed to state a plausible claim for breach of the lock-in agreement, and this claim should be dismissed without prejudice.

*Debt Collection Practices*

Plaintiffs allege that JPMC engaged in unlawful debt collection practices by contacting Plaintiffs on numerous occasions claiming that Plaintiffs owed in excess of $12,000.00 on their loan for late payments and late fees, even though Plaintiffs assert that they owe nothing because JPMC incorrectly handled their account and because Plaintiffs have not missed a payment or been behind on their loan payments. Plaintiffs also allege that JPMC harassed them with repeated telephone calls to Plaintiffs, their family, and their employer and that JPMC made multiple calls during several days, awakened Plaintiffs, interrupted family meals, made a minimum of seven late-night calls to their residence during the month of June 2013, and generally disrupted the peace of Plaintiffs' home. Plaintiffs allege that these acts violated Section 392.302 of the Texas Debt Collection Practices Act ("TDCA") and, by tie-in, the Texas Deceptive Trade Practices Act ("DTPA"). In their response, Plaintiffs clarify that they are not making a claim under the Federal Debt Collection Act but assert claims under Texas debt collection laws, both statutory and common-law. *See* Dkt. No. 15 at 11-12.

Under Texas law, "[a]n unreasonable collection effort is an intentional tort when there was a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm. A claim for unreasonable collection efforts is viable in Texas if a lender attempts to collect a debt that is not owed." *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 240 (5th Cir. 2014) (internal quotation marks and citations omitted).

The TDCA is the statutory embodiment of common law unreasonable collection practices and prohibits use of deceptive means, making misrepresentations, harassment, and threats in the course of collecting a consumer debt. *See* TEX. FIN. CODE §§ 392.301(a)(8); 392.302(4); 392.303(a)(2); 392.304(a)(8), (a)(19). Section 392.302(4) of the TDCA prohibits a debt collector from oppressing, harassing, or abusing a person by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number. *See id.* § 392.302(4).

Contrary to JPMC's arguments, Plaintiffs pleaded facts to suggest that JPMC's statements during the calls were false or misleading and that JPMC's collection efforts were made with the intent to abuse or harass Plaintiffs. *See Enis v. Bank of Am., N.A.*, No. 3:12-cv-295-D, 2013 WL 1721961, at *5 (N.D. Tex. Apr. 22, 2013) (denying summary judgment on claim for violation of Tex. Fin. Code § 392.302(4)). Thus, Plaintiffs stated a plausible claim for unreasonable debt collection under both common and statutory law.

Nevertheless, JPMC argues that Plaintiffs' TDCA claims are barred by the

economic loss rule because they arise from conduct governed by the Note and Deed of Trust. District courts within the Fifth Circuit have applied the economic loss doctrine to TDCA claims premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender. *See Hernandez v. U.S. Bank, N.A.*, No. 3:13-cv-2164-O, 2013 WL 6840022, at *10 (N.D. Tex. Dec. 27, 2013) (applying economic loss doctrine to allegations that defendants misrepresented the character and extent of plaintiffs' mortgage loan and sought other unauthorized charges); *Caldwell v. Flagstar Bank, FSB*, No. 3:12-cv-1855-K, 2013 WL 705110, at *12 (N.D. Tex. Feb. 4, 2013), *rec. adopted*, 2013 WL 705876 (N.D. Tex. Feb. 26, 2013) (applying economic loss doctrine to dismiss claims under Texas Finance Code §§ 392.204(a)(8) & (19)). Insofar as Plaintiffs' TDCA claims arise from claims dependent on the violation of a contract – that the conduct violated the TDCA because JPMC was making representations that were false or misleading in light of what Plaintiffs actually owed based on their contractual relationship with JMPC – they are barred by the economic loss doctrine. *See Johnson v. Wells Fargo Bank, N.A.*, No. 3:13-cv-1793-M-BN, 2014 WL 2593616, at *3-*4 (N.D. Tex. June 9, 2014); *May v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-581, 2014 WL 2586614, at *6-*7 (E.D. Tex. June 9, 2014). But, insofar as Plaintiffs' claims are based on alleged contacts by JMPC with the intent to abuse or harass Plaintiffs, they do not (at least as alleged) appear to governed by the contractual documents themselves and are not a breach of contract claim cloaked in the lexicon of the TDCA. As alleged, then, the undersigned cannot conclude at this stage that Plaintiff's TDCA

claims based on JPMC's collection efforts allegedly made with the intent to abuse or harass Plaintiffs are barred by the economic loss rule as a matter of law.

Plaintiffs allege a DTPA claim on the basis that a violation of the TDCA is a deceptive practice under the DTPA. *See* TEX. FIN. CODE ANN. § 392.404(a). The TDCA is a "tie-in" statute to the DTPA. *See Guajardo v. GC Servs., LP*, 498 F. App'x 379, 382 (5th Cir. 2012); *see also* TEX. FIN. CODE § 392.404(a) ("A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17 [of the DTPA] and is actionable under that subchapter); TEX. BUS. & COM. CODE § 17.50(h). "To succeed under such a tie-in claim, however, the claimant must show that he is a 'consumer' as defined in the [DTPA]." *Garcia v. Jenkins/Babb LLP*, No. 3:11-cv-3171-N-BH, 2013 WL 6388443, at *10 (N.D. Tex. Dec. 5, 2013) (alterations and internal quotation marks omitted); *accord Cushman v. GC Servs., L.P.*, 397 F. App'x 24, 27-28 (5th Cir. 2010); *Taylor v. Ocwen Loan Servicing, LLC*, No. H-12-2929, 2013 WL 3353955, at *4-*5 (S.D. Tex. July 3, 2013); *Bray v. Cadle Co.*, No. 4:09-CV-663, 2010 WL 4053794, at *9 (S.D. Tex. Oct. 14, 2010) (explaining that all Texas state and federal courts addressing the issue "seem to have concluded that 'the party bringing a claim under the [DTPA] for a violation of a tie-in statute must still satisfy the requirement of being a 'consumer' under the [DTPA]") (collecting cases).

JPMC argues that Plaintiffs fail to state a claim under the DTPA because they are not "consumers" as defined by the DTPA. The elements of a cause of action under the DTPA are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading or deceptive acts, and (3) these acts constituted a producing cause of the

consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)). To qualify as a consumer, "a person must have sought or acquired goods or services by purchase or lease," and "the goods and services purchased or leased must form the basis of the complaint." TEX. BUS. & COM. CODE § 17.45(4)*; Cameron v. Terrell & Garrett, Inc.* 618 S.W.2d 535, 539 (Tex. 1981). Since the lending of money is not a good or service, a borrower whose sole objective is to get a loan does not become a consumer under the DTPA. *See Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174-75 (Tex. 1980)). Moreover, "[a]lthough one who borrows money to buy a house can be a consumer under the [DTPA] because that person's objective is to buy a home, subsequent actions related to mortgage accounts – for example, extensions of further credit or modifications of the original loan – do not satisfy the 'goods and services' element of the [DTPA]." *Swim v. Bank of Am., N.A.*, No. 3:11-cv-1240-M, 2012 WL 170758, at *6 (N.D. Tex. Jan. 20, 2012). In this case, Plaintiffs' DTPA claims are not based on the original purchase of their home. Therefore, Plaintiffs are not consumers under the DTPA, and they have failed to state a plausible DTPA claim.

Accordingly, Plaintiffs' common-law unreasonable collection tort claim and TDCA claims based on JPMC's collection efforts allegedly made with the intent to abuse or harass Plaintiffs should not be dismissed, but Plaintiffs' TDCA claims based on JPMC's allegedly false or misleading statements and Plaintiffs' DTPA claim should be dismissed with prejudice.

*Conversion*

Plaintiffs allege JPMC converted $10,000.00 when it posted their $4,300.00 mortgage payment as $14,300.00 and took possession of $10,000.00 to which it was not entitled.

Under Texas law, conversion is "the wrongful exercise of dominion and control over another's property in violation of the property owner's rights." *ITT Commercial Fin. Corp. v. Bank of the W.*, 166 F.3d 295, 305 (5th Cir. 1999). "'The elements of a conversion cause of action are: (1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property.'" *Felchak v. JP Morgan Chase Bank, N.A.*, No. H-12-2847, 2013 WL 1966972, at * 3 (S.D. Tex. May 10, 2013) (quoting *Allan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 888 (Tex. App.—Dallas 2009, no pet.). Because the title to money passes with delivery by its nature, a cause of action for conversion fails "when the plaintiff cannot trace the exact funds claimed to be converted, making it impossible to identify the specific monies in dispute." *Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.*, 438 F. Supp. 2d 696, 707 (E.D. Tex. 2006) (citing *Ins. Co. of N. Am. v. Hickman*, No. 05-99-01162-CV, 2000 WL 1207138, at *4 (Tex. App. – Dallas Aug. 25, 2000, no pet.)). Money can be the subject of a conversion claim only if it can be identified as a specific chattel, and a claim will not lie "where an indebtedness can be discharged by a

payment of money generally." *Id.* (internal quotation marks omitted). Thus, when an indebtedness can be discharged by payment of money, a conversion action is inappropriate. *See Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App. – Dallas 1992, writ denied); *Gronberg v. York*, 568 S.W.2d 139, 144-45 (Tex. Civ. App. – Tyler 1978, writ ref'd n.r.e.).

Plaintiffs allege that JPMC failed to account for the $10,000.00 but not that they demanded return of the money, and the alleged $10,000.00 indebtedness as a result of the bank's posting error can be discharged by payment of money. Therefore, Plaintiffs have failed to plead facts to state a plausible claim for conversion. And even if they had, because Plaintiffs' conversion claim stems from payments due under a contract, it is barred by the economic loss rule. *See Felchak*, 2013 WL 1966972, at *3-*4.

This claim fails as a matter of law and should be dismissed with prejudice.

*Negligence*

Plaintiffs also allege negligence based on JPMC's coding of their mortgage payment for $14,300.00 instead of $4,300.00. As discussed above, Texas does not recognize a fiduciary duty or a duty of good faith between a lender and a borrower. *See Milton*, 508 F. App'x at 329; *Levels*, 969 F. Supp. 2d at 717-18. And Plaintiffs negligence claim is barred by the economic loss rule because Plaintiffs fail to allege an injury independent from the subject matter of the contract. *See Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 583 (N.D. Tex. 2013). This claim fails as a matter of law and should be dismissed with prejudice.

*Estoppel and Waiver*

Finally, Plaintiffs assert JPMC is estopped from and has waived any rights it may have to assert claims against Plaintiffs. In their response to the motion to dismiss, Plaintiffs argue that their estoppel claim is actually a claim for promissory estoppel. Promissory estoppel is an equitable doctrine that ordinarily is used as a defense in order to prevent a party from insisting on its strict legal rights when it would be unjust to allow it to enforce them. *See Martin-Janson v. JP Morgan Chase Bank, N.A.*, 536 F. App'x 394, 398 (5th Cir. 2013). Promissory estoppel can be a cause of action for a "promisee who has reasonably relied to his detriment on an otherwise unenforceable promise." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 761 (N.D. Tex. 2012). But Plaintiffs themselves acknowledge that their pleading of waiver and estoppel "may appear unclear," Dkt. No. 15 at 20 – and, indeed, Plaintiffs' Petition does not make clear how they have plausibly pleaded promissory estoppel as a cause of action as opposed to estoppel and waiver as defenses to claims that JPMC has not pleaded. As such, Plaintiffs' assertions of waiver and estoppel are not properly before the Court and should be dismissed without prejudice to Plaintiff's repleading any claim for promissory estoppel. *See Brooks v. Ocwen Lann Servicing, LLC.* No. H-12-1410, 2012 WL 3069937, at *7 (S.D. Tex. July 27, 2012).

## Recommendation

Because Defendant Dienbao Tran was improperly joined, he should be dismissed, and, because, with Tran's dismissal, complete diversity of citizenship exists, Plaintiffs' Opposed Motion to Remand [Dkt. No. 10] should be denied, and Defendant

Tran's Motion to Dismiss [Dkt. No. 7] should be denied as moot.

Defendant JPMC's Motion to Dismiss [Dkt. No. 6] should be granted in part and denied in part as follows:

· JPMC's Motion to Dismiss should be denied as to Plaintiffs' claim for breach of contract on the original mortgage loan and Plaintiffs' common-law unreasonable collection tort claim and Texas Debt Collection Practices Act claims based on JPMC's collection efforts allegedly made with the intent to abuse or harass Plaintiffs.

· JPMC's Motion to Dismiss should be granted as to Plaintiffs' claims for breach of contract on the lock-in agreement, and estoppel and waiver, which should be dismissed without prejudice, and as to Plaintiffs' claims for conversion, violations of the Texas Debt Collection Practices Act based on JPMC's allegedly making false or misleading statements, violations of the Texas Deceptive Trade Practices Act, and negligence, which should be dismissed with prejudice.

· The Court should grant Plaintiff 21 days from the date of any order adopting these Findings, Conclusions, and Recommendation in which to file an amended complaint as to those claims that should be dismissed without prejudice and should order that, if Plaintiff fails to do so, the case will be dismissed with prejudice without further notice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within

14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).
In order to be specific, an objection must identify the specific finding or
recommendation to which objection is made, state the basis for the objection, and
specify the place in the magistrate judge's findings, conclusions, and recommendation
where the disputed determination is found. An objection that merely incorporates by
reference or refers to the briefing before the magistrate judge is not specific. Failure
to file specific written objections will bar the aggrieved party from appealing the
factual findings and legal conclusions of the magistrate judge that are accepted or
adopted by the district court, except upon grounds of plain error. *See Douglass v.
United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 3, 2014

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE